

FILED
CLERK, U.S. DISTRICT COURT
February 5, 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: CSI DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

HEIDY C.[1],
    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,
    Defendant.

NO. EDCV 17-2302-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Heidy C. ("Plaintiff") filed a Complaint on November 13, 2017, seeking review of the denial of her applications for a period of disability, disability insurance ("DI"), and supplemental security income ("SSI"). On January 17, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On November 27, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 26.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at

---

[1]     Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

25.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See* AR 26.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

In June 2013, Plaintiff, who was born on May 19, 1965, protectively filed applications for a period of disability, DI, and SSI.[2] (*See* Administrative Record ("AR") 183-214.) Plaintiff alleged disability commencing April 15, 2008 due to: fibromyalgia; hypothyroidism; IBS; diabetes; and depression. (AR 207, 226.) Plaintiff subsequently amended the alleged onset date to her application date – June 30, 2013 – and dismissed her claim for a period of disability and DI. (AR 43.) Plaintiff previously worked as a dental assistant (DOT 079.361-018). (AR 30, 238.) After the Commissioner denied Plaintiff's applications initially (AR 84, 85) and on reconsideration (AR 112, 113), Plaintiff requested a hearing (AR 132-33). Administrative Law Judge Joan Ho ("ALJ") held a hearing on March 17, 2016. (AR 38.) Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Luis Mas. (AR 38-58.) On June 15, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (AR 21-32.) On September 18, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her June 30, 2013 application date. (AR 23.) The ALJ determined that Plaintiff had the following severe impairments: "fibromyalgia; degenerative disc disease of the cervical spine; mild

---

[2] Plaintiff was 42 years old on the alleged onset date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff has since changed age categories and is now a person closely approaching advanced age. *See id.* §§ 404.1563(d), 416.963(d).

2

osteoarthritis of the bilateral knees; mild degenerative disc disease at the mid thoracic spine; and bilateral myopia, astigmatism, presbyopia, and moderate non-proliferative diabetic retinopathy with macular edema." (AR 24.) In reaching this conclusion, the ALJ found that Plaintiff had other medically determinable impairments but they were not "severe." (AR 24.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 25.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the following:

> [O]ccasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb ramps/stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl; and limited to work that does not require highly acute vision.

(AR 26.)

The ALJ found that Plaintiff was unable to perform her past relevant work as a dental assistant (DOT 079.361-018). (AR 30.) However, the ALJ also found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of ticket taker (DOT 344.667-010), cashier II (DOT 211.462-010), and checker I (DOT 222.687-010). (AR 31.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the application date through the date of the ALJ's decision. (AR 32.)

\\
\\

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the

agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

There are two issues in dispute: (1) whether the ALJ properly evaluated the credibility of Plaintiff's statements about the severity of her symptoms and limitations; and (2) whether the ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial evidence. (Joint Stip. at 4.)

### I. The ALJ's Evaluation of the Credibility of Plaintiff's Statements

**A. Plaintiff's Statements**

*1. October 10, 2013 Adult Function Report*

On October 10, 2013, Plaintiff completed an Adult Function Report on which she made the following statements. (AR 257-64.) Plaintiff stated that she cannot sit or stand for long periods of time due to pain in her ankles, knees, and hips. (AR 257.) Her medications bring her pain down from a level 10 to a 6-7. (AR 257.) However, her medications give her dizzy spells and interfere with her concentration. (AR 257.) Plaintiff's pain also interferes with her sleep. (AR 258.)

During the course of a day, Plaintiff gets her 10 year old son off to school, makes breakfast, does some light housework, and gets groceries if needed for dinner. (AR 257.) She stated that her 20 year old daughter sometimes helps by driving the 10 year old to and from school and by making dinner when Plaintiff is not feeling well. (AR 258.) Plaintiff is able to do all personal care activities, although some might take her longer than they did before. (AR 258.) Plaintiff prepares meals daily: soups; sandwiches; some frozen dinners; and, every once

in a while, a complete dinner with help from her adult daughter. (AR 259.) It takes Plaintiff two to three hours to prepare these meals. (AR 259.) Plaintiff's housework consists of doing the laundry and doing some cleaning and cooking when she is feeling well. (AR 259.) She stated that her daughter helps her do some daily chores, including carrying the laundry up and down the stairs and cooking. (AR 259.) Plaintiff stated that she does not do any yard work and only goes outside if it is "absolutely necessary," *i.e.*, to pick up her son from school or to go shopping. (AR 260.) However, she also stated that she does not go shopping alone because her medications cause her to feel drowsy and experience dizzy spells. (AR 260.) Plaintiff stated that she tries not to go anywhere because of her IBS and the medication side effects. (AR 261.) When she does go shopping, Plaintiff shops for food, clothes for her son, medications, and "household necessities." (AR 260.) She stated that she goes shopping once or twice a week for 1.5 hours at a time. (AR 260.) Plaintiff watches TV daily. (AR 261.) Plaintiff indicated that her conditions affect her ability to lift, climb stairs, stand, kneel, walk, squat, sit, concentrate, remember, and complete tasks. (AR 262.) She stated that she can walk for one block before needing to stop and rest for a few minutes. (AR 262.) She stated that she can pay attention for 20-30 minutes at a time but does not always finish what she starts (e.g., conversations, chores, reading, watching a movie). (AR 262.) She stated that when she is under stress she experiences anxiety attacks. (AR 263.) Plaintiff listed her medications as gabapentin (a nerve pain medication), sertraline (an antidepressant), and piroxicam (an anti-inflammatory drug). (AR 264.)

### 2. *March 17, 2016 Hearing Testimony*

Plaintiff also testified at the March 17, 2016 hearing, approximately two and a half years after she completed the Adult Function Report. (AR 39.) Plaintiff testified that she was unable to work because she has constant muscle and joint aches, dizzy spells, and irritable bowel syndrome ("IBS") that could "come on at any moment." (AR 48.) She testified that she did not think she could return to working as a dental assistant because she would be unable to be

on her feet for long periods and to sit for long periods during procedures and because of her dizziness and drowsiness she did not think that she would be able to work properly with patients and sharp instruments. (AR 49.) She also testified that she has a lot of issues with her vision and cannot see things close up, which she would need to be able to do to work as a dental assistant. (AR 49.) She testified that she believed she could be on her feet for maybe 10 minutes at a time. (AR 50.) She testified that she sees a pain management specialist who was trying different medications and had given her a shot in her neck that had eased her pain for maybe three months. (AR 50.)

Plaintiff testified that her adult daughter helps her wash dishes, make dinner, and run errands when Plaintiff is not feeling well. (AR 51.) She testified that during the day she spends "quite a few hours" lying down and sleeps "a lot." (AR 51.) Plaintiff testified that her anxiety sometimes causes her to leave "the market" because she suddenly "couldn't be there." (AR 54.)

**B. Applicable Law**

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161

(9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

### C. ALJ's Assessment And Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence of record. (AR 29.) First, the ALJ stated that Plaintiff has not generally received the type of medical treatment one would expect for a totally disabled individual because: there were significant gaps in Plaintiff's history of treatment; Plaintiff made relatively infrequent trips to the doctor for allegedly disabling symptoms; and Plaintiff's "use of medications does not suggest the presence of impairments which is more limiting than found in [the ALJ's] decision." (AR 29.) Second, the ALJ stated that Plaintiff's activities of daily living were "somewhat normal" and required some of the same physical and mental abilities and social interactions as those necessary for obtaining and maintaining employment. (AR 29.) Specifically, the ALJ cited Plaintiff's ability to perform personal care activities, childcare, housework, preparing meals, laundry, cleaning, cooking, paying bills, watching movies and television, driving, shopping, and spending time with others. (AR 29.)

### 1. Plaintiff's Medical Treatment

The ALJ's first reason for finding Plaintiff less than fully credible – the type of medical treatment she has received – is not clear, convincing, and supported by substantial evidence in the record. The ALJ states that there are "significant gaps" in Plaintiff's history of treatment. (AR 29.) The ALJ does not identify any significant gaps, and the Court's review of the administrative record does not reveal "significant gaps." The medical record shows that, in the years between Plaintiff's June 30, 2013 application date and March 17, 2016 hearing, Plaintiff suffered from multiple conditions necessitating visits to a myriad of different care providers, including rheumatologists, endocrinologists, psychiatrists, therapists, internists, and gastroenterologists, resulting in more than 30 medical appointments in less than three years. The longest gap between medical appointments was approximately 6 months between Plaintiff's October 23, 2013 follow up appointment with Dr. Babak Zamiri, a rheumatologist, and her April 29, 2014 follow up appointment with the West Gastroenterology Group. To the extent that this six month gap can be characterized as "significant," it is not a convincing reason for finding Plaintiff less than fully credible. Before Plaintiff's October 23, 2013 appointment with Dr. Zamiri, she had already received diagnoses for fibromyalgia and arthritis (*see* AR 407) and for multiple gastroenterological conditions (*see* AR 543 (results of August 15, 2013 video capsule enteroscopy report showing delayed gastric emptying suggestive of gastroparesis and "extremely congested" gastric mucosa associated with hemorrhagic gastritis)). There is no indication that Plaintiff's physicians advised her to undergo additional tests or treatment during the six month period in question, and, perhaps more significantly, there is no indication that her condition would have improved had she made additional medical appointments during that time. Additionally, Plaintiff did attend a psychiatric evaluation at the request of the Commissioner during the six month period (*see* AR 435 (1/9/2014)) and she continued to follow her treatment regimen by taking her prescribed medications, which, at that time, included: gabapentin (Neurontin), a nerve pain medication; sertraline (Zoloft), for depression and anxiety; canagliflozin (Invokana), for diabetes; and levothyroxine (Levoxyl),

for hypothyroidism. (AR 448.) In sum, given the nature of Plaintiff's conditions and her prescribed treatment plans, the six month gap between Plaintiff's rheumatology appointment with Dr. Zamiri in October 2013 and her gastroenterology appointment in April 2014 was not a convincing reason for finding Plaintiff's statements less than fully credible.

Similarly, the Court is not persuaded that Plaintiff's complaints were not credible because she made "relatively infrequent trips to the doctor for allegedly disabling symptoms." (*See* AR 29.) As stated above, Plaintiff attended more than 30 medical appointments in less than 3 years, saw a wide range of specialists, and sometimes saw multiple care providers in a single month. (*See, e.g.*, AR 482-83 (12/10/2015 endocrinology appointment), 481 (12/4/2015 psychiatric appointment); AR 478 (7/31/2015 psychiatric appointment), 955 (appointment with family therapist), 620 (7/3/2015 emergency room admission for lesion on foot related to diabetes)); AR 957 (6/13/2015 appointment with family therapist), 526 (gastroenterology appointment), 454-57 (6/8/2015 pre-operative appointment with internist in advance of carpal tunnel release surgery).) Accordingly, substantial evidence in the record does not support the ALJ's finding that Plaintiff's trips to the doctor were "relatively infrequent." Moreover, there is no indication that Plaintiff's doctors were urging her to schedule more frequent appointments or had ever suggested that she would benefit from more frequent appointments. To the contrary, Plaintiff's rheumatologist, Dr. Zamiri, generally asked Plaintiff to schedule follow up visits every five to six months. (*See, e.g.*, AR 399, 402, 406.) Thus, the frequency of Plaintiff's medical appointments are not a convincing reason for finding Plaintiff's statements less than fully credible.

The ALJ also cited Plaintiff's "use of medications" as being inconsistent with limitations greater than those found by the ALJ. (AR 29.) It is unclear what aspect of Plaintiff's extensive medication use was inconsistent with Plaintiff's statements about her symptoms and limitations. At times, Plaintiff was taking ten or more different prescription medications daily, including gabapentin, Norco (a highly addictive narcotic), alprazolam (Xanax), sertraline

(Zoloft), baclofen (a muscle relaxant), diclofenac (anti-inflammatory drug), piroxicam (a second anti-inflammatory), Invokana, levothyroxine, metformin (a second anti-diabetic medication), and pantoprazole (a proton pump inhibiter for gastroesophageal reflux disease). (*See, e.g.,* AR 482 (list of current medications as of 12/10/2015), 486 (list of current medications as of 8/26/2015).) Plaintiff's need for this many daily medications, including three different pain relievers, a nerve pain medication, a muscle relaxant, and both Xanax and Zoloft, would seem to support, rather than undermine, her allegations of disabling limitations. Accordingly, the ALJ's determination that Plaintiff had not "received the type of medical treatment one would expect for a totally disabled individual" is not a convincing reason supported by substantial evidence for finding Plaintiff's statements about her symptoms and limitation less than fully credible.

*2. Plaintiff's Activities of Daily Living*

The ALJ's second reason for finding Plaintiff's statements less than fully credible is that Plaintiff performed activities of daily living that were "somewhat normal" and required some of the same physical and mental abilities and social interactions as those necessary for obtaining and maintaining employment. (AR 29.) Specifically, the ALJ cited Plaintiff's ability to perform personal care activities, childcare, housework, preparing meals, laundry, cleaning, cooking, paying bills, watching movies and television, driving, shopping, and spending time with others. (AR 29.)

An ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either: "contradict [the plaintiff's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996). The ALJ does not indicate that Plaintiff's activities of daily living

11

contradict her testimony, only that "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 29.) This is not the standard. The ALJ did not find that Plaintiff "is able to spend a substantial portion of [her] day performing . . . activities that are transferable to a work setting." *See Orn*, 495 F.3d at 639. Nor could she. Plaintiff indicates that, during an average day, she drives her son to and from school, prepares breakfast, lunch, and dinner – usually soups, sandwiches, or frozen meals – and does the laundry and some cleaning. (AR 257-59.) However, she also indicates that she receives help from her adult daughter in accomplishing these tasks. (*See id.*) In particular, Plaintiff reports that, when she is not feeling well, her daughter does virtually all of these tasks: driving Plaintiff's son to and from school; running errands; making dinner; washing dishes; carrying laundry and up and down the stairs; and doing some cleaning. (AR 51, 257-59.) Similarly, Plaintiff indicates that she shops for groceries, clothes for her son, and medications once or twice a week for 1.5 hours at a time, but she does not go shopping alone because of the side effects of her medications. (AR 260.) Plaintiff also testified that during the day she spends "quite a few hours" lying down and sleeps "a lot." (AR 51.) Given Plaintiff's reported need for both help and rest, the record before the Court does not support a finding that Plaintiff spends a substantial portion of her day performing activities that are transferable to a work setting.

Furthermore, the Ninth Circuit has repeatedly emphasized that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). In *Smolen*, for example, the Ninth Circuit pointed out that "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1287 n. 7; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (same). Similarly, in *Reddick*, the Ninth Circuit stated that "disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations." 157 F.3d at 722. Further, in *Garrison*, the Ninth Circuit quoted with approval the Seventh Circuit's admonition that:

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases.

*Garrison*, 759 F.3d at 1016 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

In light of the foregoing, the Court rejects the Commissioner's attempt to discredit Plaintiff's statements solely because Plaintiff, a single mom of a then pre-teen boy, had not lost all motivation and physical capacity for being a mother to her son and, instead, persisted, to the best of her ability, in providing food, clothing, transportation to school, and a clean home for her child. Thus, the ALJ failed to provide a clear and convincing reason supported by substantial evidence for finding Plaintiff's statements about her symptoms and limitations less than fully credible. Remand on this issue is warranted.

II. **The ALJ's Assessment of Plaintiff's Residual Functional Capacity**

The second issue in dispute is whether the ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial evidence. (AR 4.) Specifically, Plaintiff contends that the ALJ erred by failing to order a consultative examination. (*See* Joint Stip. at 19-20.) Plaintiff points out that, in the absence of a physical RFC assessment from an examining physician, the ALJ relied on the 2013 and 2014 opinions of the reviewing State

agency medical consultants, Dr. Chan, an internist, and Dr. Ballard, a family or general practitioner, which were more than two years old at the time of the ALJ's decision. (Joint Stip. at 30; *see also* AR 30, 84, 113.) Specifically, the ALJ stated that Drs. Ballard and Chan "found that [Plaintiff] can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday." (AR 30.) The ALJ adopted the assessment of Drs. Ballard and Chan. (*Compare* AR 26 *with* AR 68, 95.)

"[T]he Commissioner has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (internal quotation marks and citation omitted). However, some cases "normally require a consultative examination, including those in which additional evidence needed is not contained in the records of the claimant's medical sources and those involving an ambiguity or insufficiency in the evidence that must be resolved." *Id.* (internal quotation marks and citations omitted). The Agency's regulations state that it "may" purchase a consultative examination "to try to resolve an inconsistency in the evidence" or when the evidence is insufficient to support a determination. 20 C.F.R. § 416.919a(b). The Ninth Circuit has found that a case may be remanded where the ALJ's refusal to purchase a consultative examination for a claimant was "not in accordance with the law." *Reed*, 270 F.3d at 845.

Because this matter must be remanded for reconsideration of the credibility of Plaintiff's statements about her symptoms and limitations, the Court exercises its discretion not to decide whether the ALJ's failure to order a consultative examination rendered her assessment of Plaintiff's RFC unsupported by substantial evidence in the record. Nevertheless, on remand, the ALJ, after reconsidering the credibility of Plaintiff's statements, may need to reassess Plaintiff's RFC. In doing so, the ALJ should consider whether, given the absence of an RFC assessment from a treating physician, the record would benefit from the opinion of an examining physician who could shed light on both the apparent inconsistencies between

Plaintiff's statements and the opinions of Drs. Ballard and Chan and on Plaintiff's current physical condition, which the now five and six year old opinions of Drs. Ballard and Chan do not address.

### III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* n.26. However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

Here, it is not clear from the record that, if the ALJ credited the statements of Plaintiff, he would be required to find Plaintiff disabled on remand. Accordingly, the Court remands for further development of the record, including the proper consideration of the statements and testimony of Plaintiff and, if appropriate, the purchase of a consultative physical examination.

\\
\\

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: February 5, 2019

                                                    KAREN L. STEVENSON
                                  UNITED STATES MAGISTRATE JUDGE